UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID W. MURPHY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WATER DISTRICT 37 AND WATER DISTRICT 37M,<br><br>　　　　Defendant. | Case No. 1:10-cv-00149-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Before the Court is Defendants Water District 37 and Water District 37M's Motion to Enforce Settlement (Dkt. 64). For the reasons set forth below, the Court will grant the motion.

## BACKGROUND

On September 12, 2013, the parties attended a judicial settlement conference with Magistrate Judge Mikel Williams serving as the mediator. Plaintiff David. W. Murphy and his pro bono counsel, Adam Little, were present at the settlement conference, as well as Glen Goff of the State of Idaho, Department of Administration, Risk Management

Program, Idaho Department of Water Resources DAG, Garrick Baxter, and defense counsel, Michael E. Kelly, for the Water District. At the conclusion of the settlement conference, the parties reached a resolution, which Judge Williams confirmed on the record. *Minute Entries,* Dkts. 52 and 53).

Representatives for the Water District then worked on memorializing the specific terms of the agreement in the Release and Settlement Agreement. *Kelly Aff.*, Ex. A, Dkt. 61-2. Later, the parties revised the terms and conditions of the Release and Settlement Agreement and in the language of the an employment reference letter signed by the Water District 37 Water Master, Kevin Lakey. *Id.* at Ex. B. Further revisions were made to the Release and Indemnity Agreement with the addition of Frederic Brossy as a signatory on the Release for the Water District, and the deletion of the last paragraph in the employment reference letter, which was done at Murphy's request. *Id.* at Exs. C and D.

On November 12, 2012, Murphy's pro bono counsel served the Water District with a motion for leave to withdraw as counsel of record. *Mot. to Withdraw,* Dkt. 57. Attached to the Affidavit of Counsel was a complaint Murphy had filed with the U.S. Department of Justice against the U.S. District Court-District of Idaho claiming that he was discriminated against during the July 17, 2012 deposition in this matter and also during the September 17, 2012 settlement conference. *Dept. of Justice Compl.*, Dkt. 57-1 at 5-6.

In May 2012, Murphy had his doctor submit a note requesting CART (Communication Assisted Real Time Translation) assistance during his deposition, and other court proceedings. In July 2012, Murphy was deposed with counsel present but without aid of the requested CART assistance. At the beginning of the deposition, defense counsel specifically asked Murphy whether he could hear and Murphy answered in the affirmative. *Murphy Dep.* 6:7-11, Ex. E to *Kelly Aff.*, Dkt. 64-2. And at no point during the deposition did Murphy say he could not continue the deposition without CART assistance. *Kelly Aff.* ¶ 7, Dkt. 64-2.

After the deposition, Murphy had an opportunity to review the deposition transcript and make any necessary changes. Murphy made a few changes and then verified the transcript. *Verification Page*, Ex. F. to Kelly Aff., Dkt. 64-2. At no point in time, did Murphy suggest that anything took place during his deposition that caused him concern or the belief that he had been taken advantage of during the deposition. *Kelly Aff.* ¶ 9. According to the Water, District, because Murphy never raised any concerns regarding his deposition, his deposition testimony did not significantly affect the settlement discussions.

Murphy also alleges that he could not hear during the settlement conference. *Murphy Aff.* ¶ 7, Dkt. 68-1. He says that after reviewing the written settlement agreement after the settlement conference, he "was simply shocked how much were missed," and he "became very discouraged over this." *Resp. Br.* at 1, Dkt. 68. Because of all he apparently missed, Murphy asked his attorney to "repeal" the deposition and settlement,

**MEMORANDUM DECISION AND ORDER - 3**

and his attorney allegedly told him "it was too late." *Id.* 1-2. Murphy suggests that both his attorney and Judge Williams used his hearing impairment to manipulate him into settling, and now he refuses to sign the settlement agreement. *Id.*

The Water District moves to enforce the settlement terms.

## ANALYSIS

An agreement to settle a legal dispute is a contract and its enforceability is governed by state contract law. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). Under Idaho law, a settlement agreement "supersedes and extinguishes all pre-existing claims the parties intended to settle." *Vanderford Co., Inc. v. Knudson*, 249 P.3d 857, 863 (Idaho 2011). "In an action brought to enforce an agreement of compromise and settlement, made in good faith, the court will not inquire into the merits or validity of the original claim." *Id.* (quoting *Goodman v. Lothrop*, 151 P.3d 818, 821 (2007)). Instead, the only issue a court will consider "is the question of the validity and enforceability of the mediation agreement at issue." *Id.*

As with any contract, Idaho law favors the finality of settlements whenever possible. *See Hershey v. Simpson*, 725 P.2d 196, 199 (Idaho App. 1986). A court, however, may set aside a settlement agreement obtained by fraud, duress, undue influence, or incapacity of a party. *Id.* In this case, Murphy, through his affidavit, raises issues of duress, undue influence, and incapacity. "A motion for the enforcement of a settlement agreement is treated as a motion for summary judgment when no evidentiary

hearing has been conducted." *Vanderford Co., Inc. v. Knudson*, 249 P.3d 85, 864 (Idaho 2011).

Murphy never makes any clear claim of duress or improper influence. In his affidavit, he says that he could not hear Judge Williams when he addressed all parties in the courtroom at the beginning of the settlement conference. *Murphy Aff.* ¶ 7, Dkt. 68-1. Because Murphy could not hear Judge Williams' explanation of the proceedings, Murphy thought it "strange" when he met in chambers with his attorney, Judge Williams, and an "unidentified lady sitting on a couch" who was not taking notes. *Id.* After this initial discussion, "the unknown lady" guided Murphy and his attorney out of the room. *Id.* When alone, Murphy and his attorney spoke very little from what Murphy recalls, but Murphy remembers his attorney's eyes "were quite red as compare to anyone will look after little or no sleep." *Id.*

Murphy says he discovered later that he did not hear Judge Williams say in this first chambers conference that everything said in the room was confidential and that Murphy should feel free to discuss his complaint. *Id.* Having apparently missed this explanation, Murphy claims he later felt he could not dispute Judge Williams' assessment of his claims. *Id.* Murphy further alleges that he thought the opening offer from the defense was $40,000, which he thought was too low. Of course, Murphy was shocked when the next offer was $7500, and he was told the opening offer had actually been $4000. *Id.* "At that point on," Murphy claims, he "was confused and stressed with feelings like I was at their mercy." *Id.*

**MEMORANDUM DECISION AND ORDER - 5**

Murphy also suggests in his affidavit that Judge Williams was "pushy" and insisted that the settlement agreement was in Murphy's best interest. *Id.* Murphy adds that Judge Williams told him that "there was no evidence of discrimination and the Water District had only 5 employees," and that Murphy could have applied for a seasonal position when he had the chance. Murphy told Judge Williams that he could not have applied for a seasonal position, and Judge Williams said it again, and Murphy again told him he could not have. When Judge Williams said a third time that Murphy could have applied for the position, Murphy did not object because Judge Williams allegedly gave Murphy an "angry and fearful expression." *Id.* Murphy criticizes his attorney for not saying anything or offering assistance during this exchange, causing Murphy to feel "quite alone." *Id.*

Finally, Murphy alleges that he could not understand everything defense counsel said when they returned to the courtroom to put the settlement terms on the record. *Id.* A few times, defense counsel asked Murphy if he could understand, and Murphy replied, "yes." *Id.* Murphy explains that he said, "yes," because he "could understand that sentence or the word "understand" because [people] usually emphasize that word." *Id.* Murphy says people often "have the misconception" that his reply to this question means that he can understand every work spoken." *Id.*

These factual allegations fall far short of demonstrating that anyone present at the settlement conference engaged in any misconduct or exerted any improper influence over Murphy. Rather, even accepting Murphy's factual allegations as true, Judge Williams

acted within the bounds of his role in facilitating settlement, and the evidence does not show that he, or anyone else present at the settlement conference, bullied Murphy into accepting the settlement terms.  Even if Murphy disagreed with Judge Williams' assessment of his case, Murphy alleges no facts suggesting he did not voluntarily agree to settlement.

Nor was there any evidence that Murphy was incapacitated when he agreed to the general settlement terms.  Murphy says he was very stressed during settlement negotiations, and that he felt "quite alone.  He also says in retrospect that he missed much of what occurred, but he asserts no facts indicating that he did not understand the essential elements of the settlement agreement. When defense counsel asked Murphy several times whether Murphy understood what defense counsel was putting on the record, Murphy said he did.  Contrary to what Murphy suggests, most reasonable people would infer from Murphy's affirmative answer that he understood the settlement terms and not just the question, "do you understand this sentence I am asking right now, or do you understand that the word "understand."  Even assuming, however, Murphy missed some of the settlement discussions, he fails to specify what settlement terms he missed or believes are unfair.

At most, Murphy's factual allegations show mere stress, which is perfectly normal in such a situation and not grounds to unwind an oral settlement. *Olam v. Congress Mortg. Co*. 68 F.Supp.2d 1110, 1144 (N.D.Cal. 1999) (applying California law) (although mediation lasted more than 12 hours, until 1:00 am, and plaintiff was stressed

**MEMORANDUM DECISION AND ORDER - 7**

and hungry and suffering from health problems, "these facts fall far short, as a matter of law, of establishing [] "undue susceptibility"). Moreover, Murphy was represented by counsel for the entire duration of the mediation. Even assuming Murphy was distressed and now in hindsight questions why he entered into the agreement, such facts are insufficient to warrant setting aside the agreement on the ground of incapacity. *See, e.g., Crupi v. Crupi*, 784 So.2d 611, 614 (Fla.Dist.Ct.App.2001) (affirming "the trial court's finding that three Xanax pills, and anxiety and pressure to settle are insufficient ... to set aside [a mediated settlement agreement]. Otherwise, few, if any, mediated settlement agreements would be enforceable.").

Based on the facts alleged, the Court cannot find that Murphy entered into the oral settlement agreement as a result of duress or undue influence. Likewise, the Court cannot find that Murphy was incapacitated in a legal sense when he agreed to the settlement terms. The Court will therefore grant the Water District's motion to enforce the settlement agreement.

## ORDER

**IT IS ORDERED that** Defendants Water District 37 and Water District 37M's Motion to Enforce Settlement (Dkt. 64) is **GRANTED**.



DATED: June 27, 2013

_____
B. Lynn Winmill
Chief Judge
United States District Court

**MEMORANDUM DECISION AND ORDER - 9**